IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 7, 2003

## ADARRYL DEVON BROOKS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Obion County**
**No. 1-105    William B. Acree, Jr., Judge**

_____

**No. W2002-01157-CCA-R3-PC - Filed February 12, 2003**

_____

The petitioner, Adarryl Devon Brooks, appeals the trial court's denial of his petition for post-conviction relief, which followed his jury convictions for possession of cocaine with intent to sell, criminal impersonation, and failure to appear. On appeal, the petitioner contends his trial counsel was ineffective in failing to adequately investigate his case and in failing to interview prospective witnesses. Upon review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

James T. Powell, Union City, Tennessee, for the appellant, Adarryl Devon Brooks.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; and Thomas A. Thomas, District Attorney General, for the appellee, State of Tennessee.

### OPINION

An Obion County jury convicted the petitioner of possession of more than .5 grams of cocaine with intent to sell, criminal impersonation, and failure to appear. This court affirmed his convictions on appeal. *See* State v. Adarryl Devon Brooks, No. W1999-00632-CCA-R3-CO, 2001 Tenn. Crim. App. LEXIS 21 (Tenn. Crim. App. Jan. 9, 2001, at Jackson).

### I. TRIAL PROCEEDINGS

We garner the following facts from our prior opinion on the petitioner's direct appeal. On March 14, 1998, police officers Karl Jackson, Lee Dearmitt, and Kevin Griffin stopped a vehicle driven by Andre Goss based upon outstanding warrants against Goss. The petitioner, a passenger in the front seat of the vehicle, falsely identified himself to Officer Griffin as Charlie McBride, Jr.

Goss consented to a search of the vehicle. Officer Dearmitt, upon finding a loaded .357 revolver underneath the front bench seat of the vehicle, arrested Goss and the petitioner. Officer Jackson noticed Goss had his hands clenched and reached for him. A struggle ensued, during which a 6.8 gram rock of crack cocaine fell from Goss's hand. The officers also found cocaine in the driver's side door pocket and marijuana in the ashtray.

When he arrived at the police station, the petitioner again falsely identified himself as Charlie McBride, Jr., and volunteered to give a statement. After Officer Griffin made him aware of his *Miranda* rights, the petitioner handwrote a statement admitting he had "laid the dope on the seat," but he contended he was unaware of the gun's existence. He then signed the statement "Charlie McBride, Jr."

The petitioner was again advised of his rights and gave a second statement. In his second statement, the petitioner denied possessing any drugs, weapons, or money; rather, he claimed the drugs belonged to another passenger, who requested that he hold them. He stated the passenger exited the vehicle before the police arrived. The petitioner again signed the second statement "Charlie, McBride, Jr."

During a suppression hearing regarding the two statements, the petitioner testified he initially intended to take the blame for the offenses, but then changed his mind. He stated Goss told him to use the name "Charlie McBride" and promised he would be paid for admitting to the offenses under the false name. The defendant stated he intended to make bond and "disappear." The trial court denied the motion to suppress, and the petitioner did not testify at trial.

The record further shows that the petitioner failed to appear at his arraignment.

As stated, the jury convicted the petitioner of possession of more than .5 grams of cocaine with intent to sell, criminal impersonation, and failure to appear. He was acquitted on the charge of unlawful possession of a weapon.

## II. POST-CONVICTION RELIEF HEARING

At the post-conviction relief hearing, the petitioner testified he met with his trial counsel on three to four occasions prior to trial with each meeting lasting a maximum of five minutes. He estimated that trial counsel spent a total of fifteen to twenty minutes with the petitioner in preparing for trial. The petitioner stated they never discussed a defense strategy, and they primarily discussed the possibility of a plea agreement.

The petitioner testified he told trial counsel the drugs belonged to co-defendant Goss, the driver of the vehicle. He stated he informed trial counsel the officers found the drugs in the driver's side door panel and in Goss's hand, but they did not find any drugs on the petitioner's side of the vehicle or in his control.

The petitioner testified he identified for trial counsel witnesses who might have provided exculpatory information. He stated he identified Rashonda Brown, who would have testified that

-2-

Goss came to her apartment with the drugs prior to picking up the petitioner, and that the drugs belonged to Goss. He further stated trial counsel never attempted to locate Brown. The petitioner said he had not had any contact with Brown since his arrest. The petitioner testified he informed trial counsel that Bruce Biggs would have testified that Goss admitted to Biggs that the drugs belonged to him, while Goss and Biggs were incarcerated together.

Trial counsel testified he could not recall the amount of time he spent with the petitioner prior to trial. He stated that according to his notes, their first meeting occurred on June 21, 1999, where he reviewed the indictment with the petitioner, explained the charges, and was informed by the petitioner that the drugs belonged to Goss. They then decided to set the case for trial.

Trial counsel testified he and the petitioner met again on July 20th and discussed discovery matters, the warrant, and the elements of the offenses. The petitioner then identified three potential witnesses, Goss, Biggs, and Eric Johnson, the latter of whom testified at trial.[1] They discussed the statements the petitioner made to the police and decided to file a motion to suppress the statements; the trial court denied the motion after a hearing.

Trial counsel testified he met with the petitioner on July 23rd and explained the possible sentence to the petitioner. He told the petitioner this was his last opportunity to enter a plea, and the petitioner stated he wanted to go to trial. Trial counsel stated he also spoke to the petitioner's mother on several occasions and interviewed Eric Johnson.

Trial counsel testified he interviewed Bruce Biggs, who stated he would testify that while he and Goss were incarcerated together, Goss admitted the drugs belonged to him. Trial counsel stated Goss's statement was the only information Biggs had regarding the offenses. Trial counsel explained that he first planned to call Goss as a witness in anticipation that Goss would deny ownership of the drugs, and then call Biggs to testify. However, during a jury-out hearing, Goss asserted the Fifth Amendment and refused to testify due to a pending appeal. Trial counsel stated Biggs also testified during the jury-out hearing, and due to the state's damaging cross-examination, trial counsel decided calling Biggs as a witness would not be helpful to the petitioner's case.

Trial counsel testified the first time he heard of Rashonda Brown was during the post-conviction hearing. He did not remember the petitioner mentioning her and did not interview her. He was not aware of whether Brown was listed on the indictment as a potential witness for the state and did not know what her testimony would have been had she taken the stand.

### III. POST-CONVICTION COURT'S FINDINGS

In its written findings, the post-conviction court reviewed the conflicting testimony of the petitioner and trial counsel, accredited the testimony of trial counsel, and found the petitioner failed

---

[1] At trial, Eric Johnston testified that prior to the officers' arrival, he entered the vehicle, spoke to the petitioner, and exited the vehicle. He stated that while in the vehicle, he did not see Goss or the defendant with drugs, and he did not see any drugs in the vehicle.

to establish that trial counsel's representation was deficient. The post-conviction court found that contrary to the petitioner's contentions, the record indicated trial counsel "thoroughly prepared and investigated the case and provided excellent representation at the trial." It further found that even if trial counsel were deficient, such deficiency would not have affected the outcome of the trial due to the overwhelming evidence against the petitioner.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee criminal defendants the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The claim of ineffective assistance of counsel is a mixed question of law and fact and subject to *de novo* review; however, we review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Conclusions of law are reviewed under a *de novo* standard with no presumption of correctness. *Id*. at 457. We may neither reweigh or re-evaluate the evidence nor substitute our own inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997).

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also* Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. Black, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. *Id.*

## V. ANALYSIS

The petitioner contends trial counsel was ineffective in failing to dedicate the appropriate amount of time required to adequately investigate his claims and in failing to interview prospective witnesses who could have provided exculpatory evidence. We disagree.

## A. Investigation of Claims

The petitioner contends that in preparation for trial, counsel only met with him for a total of fifteen to twenty minutes, they never discussed trial strategy, and they only spoke about a possible plea agreement. However, in its written findings, the post-conviction court accredited the testimony of trial counsel, who could not recall the amount of time he spent with the petitioner prior to trial, but described in detail the topics discussed during each meeting. According to trial counsel's testimony, they not only discussed the possibility of a plea agreement, but they also discussed defense strategy, the identity of potential witnesses, and the elements of the offenses. We conclude the petitioner has failed to establish trial counsel's representation was deficient regarding the amount of time spent conferring with the petitioner.

## B. Interview of Witnesses

The petitioner contends trial counsel was deficient in failing to investigate and interview exculpatory witnesses, who would have assisted him in his defense. He claims trial counsel made no attempt to locate and interview Rashonda Brown, who would have testified that the drugs belonged to co-defendant Goss. However, Brown did not testify at the post-conviction relief hearing, and we may not speculate on what her testimony might have been. *See* Black, 794 S.W.2d at 757.

The petitioner also contends he identified Bruce Biggs as a potential witness, and that trial counsel was deficient in failing to interview him and call him as a witness at trial. However, trial counsel testified he interviewed Biggs prior to trial; he stated Biggs would testify that while he and Goss were incarcerated together, Goss admitted the drugs belonged to him. During a jury-out hearing, Goss exercised his Fifth Amendment right against self-incrimination and refused to testify. Biggs then testified in the jury-out hearing. Trial counsel testified the state's cross-examination of Biggs during the jury-out hearing was so damaging that he decided he did not want to call Biggs as a trial witness.[2] Trial counsel's decision was a tactical one, and we decline to second-guess this trial strategy. *See* Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Therefore, we conclude the petitioner has failed to show trial counsel's representation was deficient.

## C. Prejudice

Even if trial counsel were deficient, the petitioner has failed to show he was prejudiced. As the post-conviction court found, the evidence against the petitioner presented at trial, including the testimony of the police officers and the petitioner's incriminating statements to the police, was overwhelming.

---

[2]We have examined the jury-out testimony by Bruce Biggs, and it is far from clear whether it would be beneficial to the petitioner. Trial counsel's decision not to use Biggs as a witness before the jury is understandable.

We affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE